IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ADAM T. JOHNSON, | ) | CASE NO. 1:13 CV 688 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

# Introduction

**A.    Nature of the case and proceedings**

This is an action by Adam T. Johnson under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for supplemental security income ("SSI").[1]

The parties have consented to my jurisdiction.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4]

---

[1] ECF # 1.

[2] ECF # 18.

[3] ECF # 14.

[4] ECF # 15.

Under the requirements of my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.     The Commissioner's decision**

Johnson, who was 47 years old at the time of the hearing,[11] has an eleventh grade education and has not worked full-time in the past fifteen years.[12]

The Administrative Law Judge ("ALJ") found that Johnson had the following severe impairments: obesity, osteoarthritis in both knees, gouty arthritis, an adjustment disorder, and a substance abuse disorder, in reported remission.[13] The ALJ decided that the relevant impairments did not meet or equal a listing.[14] The ALJ then made the following finding regarding Johnson's residual functional capacity:

---

[5] ECF # 7.

[6] ECF # 16.

[7] ECF # 22 (Johnson's brief), ECF # 23 (Commissioner's brief).

[8] ECF # 22-1 (Johnson's charts), ECF # 24 (Commissioner's charts).

[9] ECF # 21 (Johnson's fact sheet).

[10] ECF # 26.

[11] ECF # 15, Transcript of Proceedings ("Tr.") at 63.

[12] *Id.* at 833.

[13] *Id.* at 20.

[14] *Id.* at 21.

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except for the following limitations. The claimant can lift, carry, push and/or pull 10 pounds maximum. He can sit for six hours and stand and walk for 2 hours in an 8-hour workday with normal breaks. He must use a cane in his right, dominant hand. He is limited to no ladders, ropes, and scaffolds. He can occasionally climb stairs and ramps. He can occasionally stoop, kneel, crouch, and crawl. He is precluded from workplace hazards, such as unprotected heights and unprotected moving machinery. He is limited to low-stress tasks, and is precluded from tasks with strict time requirements or high production demand, which precludes fast-paced moving assembly lines and work paid at piece rate. He is precluded from tasks that require arbitration, negotiation, confrontation, directing the work of others or being responsible for the safety of others.[15]

The ALJ found that Johnson had no past relevant work[16] and, therefore, transferability of job skills was not an issue.

Based on an answer to a hypothetical question posed to the vocational expert at the hearing incorporating the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Johnson could perform.[17] The ALJ, therefore, found Johnson not under a disability.[18]

---

[15] *Id.* at 23.

[16] *Id.* at 26.

[17] *Id.* at 26-27.

[18] *Id.* at 27.

The Appeals Council denied Johnson's request for review of the ALJ's decision.[19] With this denial, the ALJ's decision became the final decision of the Commissioner.[20]

**C.     Issues presented**

Johnson asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Johnson presents the following two issues for judicial review:

- The ALJ adopted an RFC providing for sedentary work with the capability to sit for six hours and stand and walk for two hours in an eight-hour workday with normal breaks. The RFC also provides for Johnson to use a cane in his right dominant hand. Does substantial evidence support this RFC without further limitations caused by Johnson's severe impairment of osteoarthritis of both knees?

- The RFC contains a limitation precluding Johnson from work requiring arbitration, negotiation, confrontation, or directing the work of others. The ALJ incorporated that limitation into his hypothetical to the VE. The VE identified three jobs that Johnson could perform with that RFC – front desk receptionist, credit reference clerk, and call center operator. Does substantial evidence support a finding that Johnson could perform those jobs even with the limitation precluding him from work involving confrontation?

**D.     Disposition**

For the reasons that follow, I will conclude that the ALJ's no-disability finding does not have the support of substantial evidence. The denial of Johnson's application will, therefore, be reversed and the matter remanded.

---

[19] *Id.* at 10-16.

[20] *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011); 20 C.F.R. § 416.1481.

## Analysis

**A.    The evaluation of Johnson's mental impairments**

After review of the arguments of the parties (both in the briefs and at the oral argument), the ALJ's decision, and the evidence of record, I have determined that the outcome here turns on whether the ALJ properly applied the treating source opinion regulations, as interpreted by the Sixth Circuit, in evaluating Johnson's mental impairments and the limitations caused thereby.

The Sixth Circuit recently re-stated the responsibilities of the ALJ in assessing medical evidence in the record in light of the treating source rule:

> An ALJ is bound to adhere to certain governing standards when assessing the medical evidence in support of a disability claim. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir.2004). Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings. 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1512(b); 20 C.F.R. § 404.1513. The second is known as the "treating physician rule," *See Rogers*, 486 F.3d at 242, requiring the ALJ to give controlling weight to a treating physician's opinion as to the nature and severity of the claimant's condition as long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2) (language moved to 20 C.F.R. § 404.1527(c)(2) on March 26, 2012). The premise of the rule is that treating physicians have the best detailed and longitudinal perspective on a claimant's condition and impairments and this perspective "cannot be obtained from objective medical findings alone." 20 C.F.R. § 416.927(d)(2) (language moved to 20 C.F.R. § 416.927(c)(2) on March 26, 2012). Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Rogers*, 486 F.3d at 242. In all cases, the treating physician's opinion is entitled to great deference even if not controlling. *Id.* The failure to comply with the agency's

rules warrants a remand unless it is harmless error. *See Wilson*, 378 F.3d at 545–46.[21]

In that regard, *Gentry v. Commissioner of Social Security* was also clear that while an ALJ is not required in determining an RFC to address limitations that have been previously found to be not credible or without support in the record,[22] an ALJ may also not arrive at an RFC by simply failing to address certain portions of the medical record, or by selectively parsing – *i.e.*, "cherry-picking" – the record to avoid doing a proper analysis of all the relevant medical reports.[23] This is particularly the case where the evidence ignored is medical evidence from a treating physician. Ignoring medical evidence from a treating source in fashioning an RFC, without undertaking the required analysis appropriate to treating sources, cannot be harmless error because it "undermines [the ALJ's] decision" by disregarding evidence that could have supported a more restrictive RFC and thus potentially a finding of disability.[24]

That said, however, the ALJ here mentioned the eight pages of treatment notes from Johnson's two sessions with a psychiatrist in October and November of 2010[25] and then

---

[21] *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014).

[22] *See*, *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 715 (6th Cir. 2013).

[23] *Gentry*, 741 F.3d at 724 (citations omitted).

[24] *Id.* at 729 (citations omitted); *Grubbs v. Comm'r of Soc. Sec.*, No. 12-14621, 2014 WL 1304716, at *2 (E.D. Mich. March 31, 2014) ("The absence of a review of treatment records from a treating source and the lack of analysis of such made it impossible for the ALJ to properly assess whether the Plaintiff was disabled and/or whether Plaintiff had the residual functional capacity to do any work.").

[25] Tr. at 25.

stated that Johnson's adjustment disorder (with depressed features), which was diagnosed at this psychiatric evaluation, "has affected his mental functional capacity assessment."[26] The ALJ concluded that this effect resulted in Johnson's RFC being limited to "low-stress tasks" and other limitations.[27] In doing this, the ALJ never identified the psychiatric professional by name, or as a treating source. Consequently, there was no analysis of whether the functional opinions of this source should be given controlling weight and, if not, what weight should be assigned.

Just as important, Johnson argues, is that the "ALJ fails to offer any rationale" for how that treating source's opinion that Johnson is limited by his "chronic poor attention" – a point made twice by this source at two separate evaluations[28] – is fully addressed by the limitations of the RFC.[29]

Although it is clear that the ALJ knew of this treating source and of the limitations reflected in the treatment notes, the ALJ never conducted the required analysis that could now permit a reviewing court to determine if substantial evidence actually supports the RFC finding. The process of articulating the weight assigned to this source alone could have given the limitation of "chronic poor attention" controlling weight and so arguably have resulted in a more restrictive RFC, with all its consequences on a final decision of disability.

---

[26] *Id.*

[27] *Id.*

[28] *Id.* at 707, 711.

[29] ECF # 22 at 13.

As the Sixth Circuit has repeatedly stated, where there is a violation of the treating source rule or the good reasons requirement, without harmless error, the matter must be remanded.[30] This is true even when the conclusion of the ALJ may be otherwise justified based on a review of the record.[31]

Regarding credibility, the weight afforded to a treating source's opinion as to the extent of a claimant's limitations will factor into an ALJ's assessment of the credibility of the claimant's statements about those limitations.[32]

## B.    Step five – jobs identified

Johnson finally argues that, even with the RFC as it was, the jobs identified by the VE as being suitable for him do not "fit within the parameters" of the RFC.[33] Johnson contends that all the specified jobs of front door receptionist, call center operator, and credit reference clerk deal with the public and have the potential for confrontation, thus making them unsuitable for someone with his RFC.[34]

---

[30] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-46 (6th Cir.2004). The ALJ's evaluation of Dr. Misak's treating source opinion also deficiently analyzes Johnson's physical impairment of osteoarthritis of both knees and the limitations caused thereby. Since this case is being remanded, the ALJ should do a proper analysis of Dr. Misak's opinion, in accordance with the regulations as interpreted by the Sixth Circuit's precedents such as *Gentry*, discussed above, rather than force the Commissioner's counsel to fall back on a harmless error argument and the Court to purse its way through that murky standard.

[31] *Gentry*, 741 F.3d at 15 (citations omitted).

[32] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003).

[33] ECF # 13 at 14.

[34] *Id.*

It seems clear that since both a front door receptionist and call center operator by definition deal with interacting with members of the public, and interaction inherently has the potential for conflict, both jobs would present difficulties for someone restricted from jobs involving confrontation. While that is less clear as to the credit reference clerk, because the matter is being remanded for other reasons, any new step five analysis on remand should consider the observations made here.

## Conclusion

For the reasons stated, substantial evidence does not support the finding of the Commissioner that Johnson had no disability. Accordingly, the decision of the Commissioner denying Johnson supplemental security income is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: May 14, 2014				s/ William H. Baughman, Jr.
						United States Magistrate Judge